UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Jennifer Best, individually and as mother and legal guardian on behalf of Collin Best,

    Plaintiff

v.

Las Vegas Metropolitan Police Department, et al.,

    Defendants

Case No.: 2:23-cv-01005-JAD-NJK

**Order Granting Defendants' Motion for Summary Judgment**

[ECF No. 18]

Jennifer Best, individually and as legal guardian of her son Collin Best, sues the Las Vegas Metropolitan Police Department and seven of its officers for events that transpired during Collin's[1] arrest, brief detention, and release from custody in January 2023. She alleges that the officers' conduct in effectuating the arrest constitutes assault and battery under state law and violates the Fourth Amendment's prohibition against excessive force. And she claims that Officers Levar Bell, Elisa Kofford, and Verl Conover "deported" Collin to California when he was released from custody, intentionally causing both mother and son severe emotional distress.

All of the defendants move for summary judgment. Because there is no genuine dispute that Officers Benjamin Wood, Peyton Leavitt, Jerry Wheeler, and Christopher Mendoza are shielded from this suit by the doctrine of qualified immunity, I grant summary judgment in their favor on all claims against them. I also grant summary judgment in favor of Officers Bell, Kofford, and Conover on Best's claims for intentional infliction of emotional distress because there is no evidence that those officers had anything to do with Collin's detention or release.

---

[1] Because Jennifer Best and Collin Best have the same last name, I refer to Collin by his first name for clarity's sake. I intend no disrespect by doing so.

And because the standard for assault and battery mirrors that of an excessive-force claim, I find that the defendants have met their burden on that claim, too. So I grant summary judgment for the defendants on all claims and close this case.

## Background

On January 26, 2023, Jennifer Best reported her son Collin missing.[2] It was not the first time—Collin, a then 26-year-old man with diminished mental capacity, had been reported missing to the police by his mom several times before.[3] Two days after Collin was reported missing, several officers on foot patrol on the Las Vegas Strip located him.[4] Officer Leavitt observed Collin throw his backpack over a crowd of people near the Flamingo Hotel and Casino and continue walking.[5] So he and Officer Wood stopped Collin to investigate.[6] The parties largely agree on, but characterize differently, the sequence of events that followed.[7]

The defendants submitted bodycam footage from the officer defendants present during Collin's arrest in support of their summary-judgment motion. That footage shows the officers leading Collin away from the crowds of people on The Strip, Leavitt asking him questions, and Collin consenting to a pat down.[8] Leavitt positions Collin against a wall with his feet separated and his hands behind his back.[9] Almost immediately after, Collin turns around, swinging one arm wide, and Wood, Leavitt, Wheeler, and Mendoza rush to grab Collin, bringing him down to

---

[2] ECF No. 18-2 at 52:3–9 (deposition of Jennifer Best).
[3] ECF No. 9 at 3, ¶ 17 (first-amended complaint).
[4] ECF No. 18-8 at 4, ¶ 6 (declaration of Peyton Leavitt).
[5] *Id.* at 4, ¶¶ 7, 8.
[6] ECF No. 18-6 at 2, ¶ 10 (declaration of Benjamin Wood).
[7] *See* ECF No. 18; ECF No. 21.
[8] ECF No. 18-7 at 0:09–0:57 (Leavitt's body-camera footage, manually filed with Clerk of Court).
[9] *Id.* at 1:02.

the ground while he struggles against them.[10] While pinning Collin to the ground, the officers ask him to turn over, and after some struggle, the officers forcibly turn Collin by pushing down his head, arms, and back until his face touches the concrete.[11] They pull Collin's arms out from under him, put him in handcuffs,[12] and inform him that he is going to jail "for resisting arrest."[13] They lead Collin to a side street and instruct him to sit on the curb.[14] While there, the officers ask Collin to identify himself.[15] He provides the names of a public figure and fictional characters, but never gives any accurate identifying information.[16]

The officers arrested Collin for disorderly conduct and resisting arrest,[17] took him to the Clark County Detention Center (CCDC), and booked him under the name "John Doe."[18] Collin "did not follow instructions and threw multiple pieces of clothing at staff," so he was placed in a side cell "for a cool down period."[19] The next day he was fingerprinted, identified, and released.[20] Best located Collin in Los Angeles 27 days later with the help of a hired private investigator.[21]

---

[10] *Id.* at 1:04.
[11] *Id.* at 1:09–1:39.
[12] *Id.* at 1:39–1:47.
[13] ECF No. 18-7 at 3:17 (Wood's body-camera footage, manually filed with Clerk of Court).
[14] ECF No. 18-7 at 3:54–4:25 (Leavitt's body-camera footage, manually filed with Clerk of Court).
[15] *Id.* at 6:03–6:45.
[16] *Id.*
[17] ECF No. 18-8 at 2 (Las Vegas Metropolitan Police Department Declaration of Arrest Report).
[18] ECF No. 18-8 at 5, ¶ 18 (declaration of Peyton Leavitt).
[19] ECF No. 18-9 at 8 (CCDC Incident Report).
[20] ECF No. 18-10 at 5 (Collin's SCOPE Report).
[21] ECF No. 21 at 4, ¶ 23 (declaration of Jennifer Best).

Best sues the Las Vegas Metropolitan Police Department (Metro) and Officers Wood, Leavitt, Wheeler, Mendoza, Bell, Kofford, and Conover, on behalf of herself and as Collin's legal guardian. She alleges that Wood, Leavitt, Wheeler, and Mendoza used excessive force in effectuating Collin's arrest and that he suffered bodily injuries due to their conduct.[22] She attests in a sworn declaration that Collin's wrists were cut from the handcuffs.[23] She also alleges that Bell, Kofford, and Conover intentionally inflicted emotional distress on Collin and herself by "failing to release Collin [ ] to her care" and "deporting Collin to a neighboring [s]tate" after his arrest.[24] She avers that Collin told the officers during his arrest that he was from Los Angeles, so that's where they chose to send him instead of releasing him to her care despite the fact that she had reported him missing.[25]

The defendants move for summary judgment on all claims. They first argue that Best's excessive-force claim fails as a matter of law because the officers "used minimal empty-handed force" to take Collin into custody and, regardless, they are entitled to qualified immunity.[26] They then seek summary judgment on the IIED claims because "the named defendants had nothing to do with Collin's detention or release."[27] Best responds that the defendants have failed "to justify a defense of qualified immunity" and that summary judgment may not be granted on the state-law assault and battery claims because "Nevada law does not recognize the defense of qualified immunity."[28] She also argues that a genuine dispute of material fact precludes summary

---

[22] ECF No. 9 at 6–7.
[23] ECF No. 21 at 3, ¶ 8.
[24] *Id.* at 4, ¶ 20.
[25] *Id.* at 4, ¶ 21.
[26] ECF No. 18 at 2, 16.
[27] *Id.* at 20.
[28] ECF No. 21 at 7–8.

4

judgment on the IIED claims because a jury must determine whether "the conduct of the police . . . was extreme, outrageous, and crossed the boundary of decency."[29]

**Discussion**

Summary judgment is appropriate when pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[30] "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."[31]  A fact is material if it could affect the outcome of the case.[32]

On summary judgment, the court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[33]  So the parties' burdens on an issue at trial are critical. When the moving party does not bear the burden of proof on the dispositive issues at trial, it is not required to produce evidence to negate the opponent's claim—its burden is merely to point out the evidence showing the absence of a genuine material factual issue.[34]  The movant need only defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[35]

---

[29] *Id.* at 9.

[30] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  The court's ability to grant summary judgment on certain issues or elements is inherent in Federal Rule of Civil Procedure 56.  *See* Fed. R. Civ. P. 56(a).

[31] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[32] *Id.* at 249.

[33] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[34] *Celotex*, 477 U.S. at 323.

[35] *Id.* at 322.

**A.     Defendants Bell, Kofford, and Conover are entitled to summary judgment because there is no evidence that they were involved in the events underlying this suit.**

The allegations in Best's first-amended complaint about Bell, Kofford, and Conover form the basis for her IIED claims.[36] She alleges that these officers intentionally inflicted emotional distress on Collin by, among other things, detaining him "without lawful justification," "failing to release him to the care of his legal guardian knowing he had been reported miss[ing]," and "deporting him to neighboring [s]tate," all of which she characterizes as "extreme and outrageous" conduct.[37] She also alleges that they inflicted emotional distress on her by "failing to release Collin [ ] to her care" and "deporting Collin to a neighboring [s]tate," causing her to "fear that her son . . . had died and would never be seen again."[38]

But the record shows that defendants Bell, Kofford, and Conover had no involvement in these events. Bell and Kofford are patrol officers, and Conover was a member of Metro's missing-persons unit at the time of the incident.[39] And, as Best acknowledges in her deposition testimony, the first-amended complaint has the names of the officers "mixed up."[40] Bell and Kofford's sworn declarations state that they "had no involvement on any level with the events set forth in the [f]irst[-][a]mended [c]omplaint,"[41] and Conover's sworn declaration states that he "was not involved in any manner in Collin's January 28, 2023, arrest, detention, and release from

---

[36] ECF No. 9 at 7–9.

[37] *Id.* at 8, ¶¶ 60, 61. Best attests in a sworn declaration that the defendants "deported" Collin to Los Angeles but does not establish how that information is within her personal knowledge. See ECF No. 21 at 4. No fact in the record supports this conclusory allegation.

[38] *Id.* at 8–9, ¶¶ 67, 70.

[39] ECF No. 18-3 at 2, ¶ 2 (declaration of Levar Bell); ECF No. 18-4 at 2, ¶ 2 (declaration of Elisa Kofford); ECF No. 18-5 at 2, ¶ 5 (declaration of Verl Conover).

[40] ECF No. 18-2 at 82:9.

[41] ECF No. 18-3 at 3, ¶ 16; ECF No. 18-4 at 3, ¶ 15.

custody."[42] Best has not put forward any evidence to the contrary. So, because there is no evidence that Bell, Kofford, or Conover were involved in detaining, releasing, or transporting Collin to or from CCDC, there is no genuine dispute that they did not intentionally inflict emotional distress on Best or Collin. I therefore grant summary judgment in their favor on the claims against them.

**B.   The remaining officers are entitled to qualified immunity from Best's excessive-force claim.**

Best alleges that Officers Wood, Leavitt, Wheeler, and Mendoza used excessive force when they arrested Collin on January 28, 2023.[43] The officers respond that qualified immunity shields them from Best's claims.[44] "Because qualified immunity is an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial."[45] Qualified immunity shields government officials "from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[46] Conduct is immunized if either prong is not satisfied.[47] I start with the first prong: whether the officers violated a constitutional right.

---

[42] ECF No. 18-5 at 3, ¶ 10.
[43] ECF No. 9 at 6.
[44] ECF No. 18 at 16.
[45] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsynth*, 472 U.S. 511, 526 (1985)) (cleaned up).
[46] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).
[47] *Martinez v. City of Clovis*, 943 F.3d 1260, 1270 (9th Cir. 2019).

> **1.    The record establishes that the officers did not use excessive force under Ninth Circuit law.**

An excessive-force claim brought by an arrestee (or in this case, his legal guardian) "is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right to be secure in their persons against unreasonable seizures of the person."[48] "The operative question in excessive-force cases is 'whether the totality of circumstances justifies a particular sort of search or seizure.'"[49] "Excessive-force claims are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred."[50]

Courts in the Ninth Circuit "approach an excessive-force claim in three stages."[51] First, courts "assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted."[52] Then they "evaluate the government's interests by assessing the severity of the crime; whether the suspect posed an immediate threat to the officers' or public's safety; and whether the suspect was resisting arrest or attempting to escape."[53] Finally, courts "balance the gravity of the intrusion on the individual against the government's need for that intrusion."[54]

---

[48] *Graham v. Connor*, 490 U.S. 386, 394 (1989) (cleaned up).

[49] *Cnty. of Los Angeles v. Mendez*, 581 U.S. 420, 426 (2017) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)).

[50] *Id.* at 1546–47 (cleaned up) (quoting *Saucier v. Katz*, 533 U.S. 194 (2001)).

[51] *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018) (cleaned up).

[52] *Id.* (quoting *Espinosa v. City & County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010)).

[53] *Id.*

[54] *Id.* (quoting *Espinosa*, 598 F.3d at 537).

          *a.*      *The amount of force used here was minimal.*

"To gauge the type and amount of force used, [courts] assess both 'the risk of harm and the actual harm experienced.'"[55] Courts also assess the "nature and degree of physical contact" in "classifying the force used."[56] Best argues that the officers "bruised [Collin's] wrist" and alleges in her complaint that they "inflicted serious bodily injury" and "handcuffed his wrist very tightly cutting his flesh."[57] She has pointed to no evidence to support those allegations.

But even if I were to take these allegations as true, this alleged "type and amount of force inflicted"[58] on Collin is too minimal to support an excessive-force claim. The Ninth Circuit has deemed as a minimal intrusion much greater force than Best alleges. In *Johnson v. County of Los Angeles*, for example, police found a suspect "hiding in the back seat" of a car and started "yanking, pulling, jerking, and twisting" the suspect, who yelled that the use of force was hurting him.[59] That use of force, according to the Ninth Circuit, was minimal.[60] The Ninth Circuit similarly deemed as minimal the intrusion in *Forrester v. City of San Diego*, where officers used "pain compliance techniques" on demonstrators that caused "bruises, a pinched nerve, and one broken wrist."[61] And in *Jackson v. City of Bremerton*, the Ninth Circuit determined that an

---

[55] *Sabbe v. Washington Cnty. Bd. of Comm'rs*, 84 F.4th 807, 821 (9th Cir. 2023) (citing *Nelson v. City of Davis*, 685 F.3d 867, 879 (9th Cir. 2012)).

[56] *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151–52 (9th Cir. 2022).

[57] ECF No. 9 at 4, ¶¶ 24, 26.

[58] *See Lowry v. San Diego*, 858 F.3d at 1248, 1256 (9th Cir. 2017).

[59] *Johnson v. Cnty. of Los Angeles*, 340 F.3d 787, 792 (9th Cir. 2003).

[60] *Id.* at 792; *see also Williamson*, 23 F.4th at 1152.

[61] *Forrester v. City of San Diego*, 25 F.3d 804, 806 (9th Cir. 1994).

officer placing his knee on an arrestee's back and handcuffing her was a minimal intrusion even though the encounter left the arrestee with a fractured finger.[62]

The officers did not strike Collin. They did not yank or jerk him. They also did not use any risky compliance techniques or weapons to inflict pain on him. The record shows instead, without genuine dispute, that they held Collin's hands behind his back for a pat down that Collin consented to, grabbed him when he flipped around, and held him to the ground until they were able to handcuff him. Considering these circumstances, even when taking as true Best's allegations that the officers bruised Collin's wrist and handcuffed him in such a way that it cut his flesh, I find that the officers' use of force here is akin to—if not less intrusive than—the force used in *Johnson*, *Forrester*, and *Jackson*. So I find the intrusion to be minimal under Ninth Circuit standards.

          b. *The governmental interest in the use of force weighs in favor of the officers.*

The governmental interest in the use of force is assessed "by examining [the] three core factors" established by the Supreme Court's opinion in *Graham v. Connor*.[63] These factors are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[64] But the *Graham* factors "are not exclusive," and courts must "examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'"[65]

---

[62] *Jackson v. City of Bremerton*, 268 F.3d 646, 650 (9th Cir. 2001).
[63] *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010); *Graham*, 490 U.S. at 396.
[64] *Bryan*, 630 F.3d at 826 (citing *Graham*, 490 U.S. at 396).
[65] *Id.* (citing *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)).

When weighing the first *Graham* factor, courts in the Ninth Circuit examine whether the arrestee's offense was "inherently dangerous or violent," generally concluding that "[w]hile the commission of a misdemeanor offense is not to be taken lightly, it militates against finding the force used to effect an arrest reasonable [if] the suspect was also nonviolent and posed no threat to the safety of the officers or others."[66]  The parties do not dispute that the officers initially suspected Collin of disorderly conduct, which is a minor crime made unlawful by a Clark County ordinance.[67]  Resisting arrest—the other crime for which Collin was arrested—does not constitute a severe crime either.[68]  So without more, this first factor suggests that minimal or no force to effect arrest would be reasonable.

The second and third *Graham* factors—whether the arrestee posed a threat to the safety of officers or members of the public and whether he was actively resisting arrest—support the officers' minimal use of force.  With respect to the second factor, the officers argue their use of force was justified because Collin "presented a minor threat by physically attempting to pull away" and they took "Collin to the ground for handcuffing purposes to protect against the threat he presented."[69]  Best counters that Collin "did not pose any immediate threat to the arresting officers" because "[h]e was not armed," didn't have "anything resembling a weapon," and "no weapon was found [on] him."[70]

---

[66] *Id.* at 828–29 (cleaned up).

[67] *See* ECF No. 18 at 12 (citing Clark County, Nev., Code of Ordinances § 12.33.010).

[68] *See Bryan*, 630 F.3d at 829 (noting that resisting a police officer is not an "inherently dangerous or violent" offense); *Davis v. City of Las Vegas*, 478 F.3d 1048, 1055–56 (9th Cir. 2007) (holding that obstructing a police officer is a minor offense).

[69] ECF No. 18 at 13.

[70] ECF No. 21 at 6.

But "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[71] The bodycam footage reflects that in the moments before the officers used force to arrest Collin, he appeared agitated and provided unintelligible answers to the officers' questions about whether the backpack thrown over a crowd was his.[72] The officers repeatedly asked him what drugs he had taken.[73] And in the middle of being patted down, Collin turned around and attempted to break Officer Leavitt's grip. At that point, the officers didn't know that Collin was not under the influence of drugs or that he had no weapon on him. But they did know that Collin was in close proximity to the officers as well as other people, as they had stopped Collin in a congested area of the Las Vegas Strip. So, looking from the perspective of the officers in the moment, as I must, I cannot conclude that Collin did not pose a threat to the officers or the public.

It is undisputed that Collin resisted arrest. The officers' version of events includes the detail of "Collin physically resist[ing] by pulling away,"[74] and Best does not argue or demonstrate otherwise. Leavitt's sworn declaration describes that, when he set Collin up for a pat down, Collin broke his grip and started "resisting by tensing up his body and arms and not allowing [him] to control the pat down."[75] And they aver that Collin continued resisting after the officers grabbed him, but they eventually got him into handcuffs on the ground.[76]

---

[71] *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)).
[72] ECF No. 18-7 at 3:54–4:25 (Leavitt's bodycam footage, manually filed with Clerk of Court).
[73] *Id.*
[74] ECF No. 18 at 13.
[75] ECF No. 18-8 at 4, ¶ 11 (declaration of Peyton Leavitt).
[76] *Id.* at ¶ 14; ECF No. 18-6 at 3, ¶ 15.

The officers' bodycam footage confirms these accounts. Officer Leavitt's bodycam footage clearly shows Collin moving his arms out of Leavitt's grip and turning around.[77] And after the officers brought him to the ground, the footage shows Collin struggling with the officers until they managed to put Collin's hands behind his back.[78] Best does not argue or demonstrate that Collin did not resist. So the third *Graham* factor weighs in favor of the officers.

        *c.*    *The officers' use of force was not excessive when balanced against the government's interest in using that force.*

"[B]alanc[ing] the gravity of the intrusion on the individual against the government's need for that intrusion,"[79] I find that the officers had a strong interest in using the minimal force they used on Collin. The minimal intrusion the officers made in grabbing Collin and holding him to the ground until they could handcuff him is outweighed by the government's interest in using force to secure and handcuff him. From the perspective of the officers in the moment, Collin posed a threat to the officers and the public because he moved suddenly and resisted the officers by pulling away and attempting to break their grip. I therefore conclude that, under the totality of these circumstances, the officers' use of force was not constitutionally excessive.

    **2.**    ***There is no clearly established law prohibiting the officers' use of force in this case.***

Even if Best could establish that the officers' use of force was unconstitutionally excessive, she hasn't shown that the officers violated clearly established law.[80] The central dispositive inquiry for finding a right "clearly established" is "whether it would be clear to a

---

[77] ECF No. 18-7 at 1:06 (Leavitt's body-camera footage, manually filed with Clerk of Court).
[78] *Id.* at 1:10–1:41.
[79] *Thompson*, 885 F.3d at 586 (quoting *Espinosa*, 598 F.3d at 537).
[80] ECF No. 18 at 18.

13

reasonable officer that his conduct was unlawful in the situation he confronted."[81] "To be clearly established, a right must be sufficiently clear that *every* reasonable official would have understood that *what he is doing* violates that right."[82] It is not necessary for a plaintiff to cite a case that is "directly on point."[83] As the Ninth Circuit explained in *Hamby v. Hammond*, a defendant is entitled to qualified immunity when no "precedent[] 'squarely governs' the facts here," meaning that the court "cannot say that only someone 'plainly incompetent' or who 'knowingly violate[s] the law' would have . . . acted as [the officials] did."[84]

Best cites generally to *Graham v. Connor* as the support for her arguments.[85] But the Ninth Circuit has held that *Graham* "does not by itself 'create clearly established law outside an obvious case'"[86] because the standards in *Graham* "are articulated at too high a level of generality to 'squarely govern[]'" whether officers' actions are objectively reasonable under a specific set of circumstances.[87] So barring an "obvious case," to determine whether conduct violates clearly established law, courts must "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment."[88]

The officers point to the Ninth Circuit case of *Blankenhorn v. City of Orange*[89] as the one that "the Ninth Circuit traditionally relies on . . . that 'clearly establishes'" the law that applies

---

[81] *Saucier*, 533 U.S. at 202.

[82] *Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016) (quoting *Taylor v. Barkes*, 575 U.S. 822, 825 (2015)) (emphasis in *Hamby*).

[83] *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

[84] *Hammond*, 821 F.3d at 1091.

[85] ECF No. 21 at 7.

[86] *Kisela v. Hughes*, 584 U.S. 100, 105 (2018).

[87] *O'Doan v. Sanford*, 991 F.3d 1027, 1038 (9th Cir. 2021).

[88] *White v. Pauly*, 580 U.S. 73, 79 (2017).

[89] *Blankenhorn v. City of Orange*, 485 F.3d 463, 469 (9th Cir. 2007).

when officers take a suspect to the ground.[90]  In *Blankenhorn*, the Ninth Circuit analyzed whether a three-officer "gang tackle" of a person suspected of a misdemeanor was unconstitutionally excessive.[91]  The suspect refused to comply with officers' orders to "kneel down so [they] could handcuff him."[92]  So they "immediately . . . jumped on [him]," tackled him to the ground, and punched him several times.[93]  The court held that the officers violated the Fourth Amendment because they would have been "on notice that gang-tackling without first attempting a less violent means of arresting a relatively calm [ ] suspect—especially one who . . . was not at the moment actively resisting arrest" violated the law.[94]

      Wood, Leavitt, Wheeler, and Mendoza argue that this case is distinguishable from *Blankenhorn* and therefore cannot constitute clearly established law prohibiting their use of force.  They point out that the officers did not "gang tackle" Collin and they never "punched Collin in the face and/or body."[95]  While I do not find either way whether the officers' actions constituted a gang tackle, they certainly did not punch Collin.  And, unlike Blankenhorn, Collin resisted arrest.  He spun around to evade the officers' grip and continued struggling with the officers once on the ground.  So I cannot find that the officers' use of force here was clearly established as prohibited in *Blankenhorn*.

      The Ninth Circuit has found officers' use of minimal force to violate an arrestee's Fourth Amendment rights only when arresting someone "who was suspected of a minor crime, posed no

---

[90] ECF No. 18 at 17.
[91] *Blankenhorn*, 485 F.3d at 469.
[92] *Id.*
[93] *Id.*
[94] *Id.* at 477.
[95] ECF No. 18 at 17.

apparent threat to officer safety, and could be found not to have resisted arrest."[96] In *Young v. County of Los Angeles*, the court found that pepper spraying an individual and striking him with a baton for disobeying an officer's order to get back into his car violated the Fourth Amendment because he was suspected of a misdemeanor, did not pose a threat to the officers, and did not resist.[97] But the circumstances of *Young* are also too materially different to allow it to "squarely govern" this case.[98] While the parties don't dispute that Collin's crime of disorderly conduct is a misdemeanor, it can't be said that Collin could not be found to have posed a threat to officer safety or resisted arrest. At a minimum, the record shows, and Best does not dispute, that Collin resisted arrest. And, according to other officers and the bodycam footage, Collin "continued to resist [their] handcuffing efforts on the ground."[99] The force the officers used against Collin also does not rise to the level of force used in *Young*. The *Young* court noted that pepper spray "is designed to cause intense pain" and that "there is no question that its use against an individual is a sufficiently serious intrusion upon liberty that it must be justified by a commensurately serious state interest."[100] Because the level of the intrusion here is less severe, *Young*, too, is not directly on point.

If anything, the factually analogous authority in this circuit dispels any conclusion that it was clearly established that the force used against Collin was unconstitutionally excessive. The Ninth Circuit has consistently held that officers may take individuals resisting handcuffing to the ground. In *Arpin v. Santa Clara Valley Transportation Agency*, for example, the panel held that

---

[96] *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1168 (9th Cir. 2011).
[97] *Id.* at 1168.
[98] *Kisela*, 584 U.S. at 104.
[99] ECF No. 18-6 at 3, ¶ 15 (declaration of Benjamin Wood).
[100] *Young*, 655 F.3d at 1163.

an officer's use of physical force to handcuff a suspect was reasonable because the suspect "stiffened her arm and attempted to pull it away."[101]  And in *Luchtel v. Hagemann*, the court held that it was reasonable to "pin[] [a suspect] to the ground and handcuff[] her."[102]  Even though Luchtel was "held to the floor for at least ten minutes while handcuffed with a broken arm and dislocated shoulder," the court concluded that the officers' conduct was reasonable because they did not "deploy a taser," "use batons or other weapons, such as pepper spray," "punch[] or kick[] [her] or appl[y] knee strikes," or "engage[] in unnecessary manipulation of her arms."[103]

Best identifies no precedent suggesting that the force used by the officers in effectuating Collin's arrest was excessive, let alone that the law in that regard was clearly established. Because no analogous case "articulates a constitutional rule specific enough to alert these [officers] in this case that their particular conduct was unlawful," I find that the officers' conduct did not violate clearly established law, so they are shielded from liability by the doctrine of qualified immunity.  I thus grant summary judgment in their favor on Best's excessive-force claim.

**C.  Because the standard for assault and battery claims mirrors the Fourth Amendment excessive-force standard, the defendants are entitled to summary judgment on those claims, too.**

Finally, Best brings assault and battery claims against Wood, Leavitt, Wheeler, and Mendoza.[104]  To establish an assault claim, Best must show that these defendants performed an

---

[101] *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001).

[102] *Luchtel v. Hagemann*, 623 F.3d 975, 982 (9th Cir. 2010).

[103] *Id.*

[104] ECF No. 9 at 6–7.

intentional act that caused Collin to feel apprehensive of an imminent battery.[105]  "A police officer who uses more force than is reasonably necessary to effect a lawful arrest" is liable for battery.[106]  "The standard for common-law assault and battery by a police officer thus mirrors the federal civil-rights-law standard: Liability attaches at the point at which the level of force used by a peace officer exceeds that which is objectively reasonable under the circumstances."[107]  "Accordingly, the standard for battery by a police officer under Nevada law is the same as under a § 1983 claim."[108]

Because the standard for assault and battery mirrors the standard for an excessive-force claim, the defendants have also met their burden here.  The officers have shown that their actions were reasonable under the circumstances, so Best's assault and battery claims fail, too.  I therefore grant all defendants summary judgment on Best's assault and battery claims.

---

[105] *Sheehan v. United States*, 896 F.2d 1168, 1171 n.4 (9th Cir. 1990) (citing Restatement (Second) of Torts § 21 (1965); 1 F. Harper, F. James & O. Gray, The Law of Torts § § 3.4, 3.5 (2d ed. 1986); W. Keeton, D. Dobbs, R. Keeton & D. Owen, Professor & Keeton on the Law of Torts § 10 (5th ed. 1984)).

[106] *Yada v. Simpson*, 913 P.2d 1261, 1262 (Nev. 1996) (cleaned up).

[107] *Ramirez v. City of Reno*, 925 F. Supp. 681, 691 (D. Nev. 1996) (cleaned up).

[108] *Gordon v. Las Vegas Metro. Police Dep't*, 2015 WL 5344549, at *11 (D. Nev. Sept. 14, 2015) (citing *Yada*, 913 P.2d at 1262; *Ramirez*, 925 F. Supp. at 691; *Vasquez-Brenes v. Las Vegas Metro. Police Dep't*, 51 F. Supp. 3d 999, 1014 (D. Nev. 2014)).

**Conclusion**

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **[ECF No. 18] is GRANTED**. The Clerk of Court is directed to **ENTER JUDGMENT in favor of the defendants and CLOSE THIS CASE.**

_____
U.S. District Judge Jennifer A. Dorsey
July 2, 2025